UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
U.S. BANK NATIONAL ASSOCIATION, AS : Civil Action No. _____
TRUSTEE FOR THE REGISTERED HOLDERS :
OF THE WFCM 2013-LC12 MORTGAGE TRUST :
COMMERCIAL MORTGAGE PASS-THROUGH : **COMPLAINT**
CERTIFICATES, SERIES 2013-LC12, :
:
                Plaintiff, :
:
     - against - :
:
LONG ISLAND CITY PARTNERS LLC, :
:
:
                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Plaintiff U.S. Bank National Association, as Trustee for the Registered Holders of the WFCM 2013-LC12 Mortgage Trust Commercial Mortgage Pass-Through Certificates, Series 2013-LC12 ("Plaintiff"), acting by and through Rialto Capital Advisors, LLC, as special servicer (the "Special Servicer"), by its attorneys, Bryan Cave Leighton Paisner LLP, complaining of the defendant herein, alleges as follows:

        1.     This is an action to enforce the obligations of defendant Long Island City Partners LLC ("Borrower") to make monthly interest payments to Plaintiff, and to continuously operate the former Hotel Vetiver, located at 29-11 39th Avenue, Long Island City, New York ("Property"), under the governing commercial loan documents.

## THE PARTIES

2. Plaintiff is the owner of the consolidated note and mortgages referenced herein, and the obligee under the guaranty further described herein.

3. Plaintiff is a resident of the State of Ohio, with its principal place of business at 425 Walnut Street, Cincinnati, Ohio.

4. Upon information and belief, at all times relevant hereto, Borrower (i) was and still is a limited liability company organized and existing under the laws of the State of New York; (ii) has maintained and still maintains its principal place of business located at 148 Madison Avenue, 11th Floor, New York, New York 11101; (iii) was and still is the owner of the Property located within the County of Queens, State of New York, and is more particularly described below; and (iv) is a Borrower under that certain Amended, Restated, and Consolidated Promissory Note (the "Note") and a signatory to that certain Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, and Security Agreement (the "Consolidation Agreement")

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over the Borrower as Borrower is a resident of the State of New York.

6. This Court has personal jurisdiction over the Borrower as it is transacting business within the State of New York.

7. Venue is proper in this Court because the Property is located in Queens County which is within the Eastern District of New York.

8. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

## THE NOTE AND OTHER LOAN DOCUMENTS

9. On or about June 3, 2013, Borrower executed and delivered the Note, a copy of which is annexed hereto and made part hereof as **Exhibit 1**, whereby certain Existing Notes[1] were combined to create indebtedness in the principal amount of $8,000,000.

10. Simultaneously, on or about June 3, 2013, Borrower entered into the Consolidation Agreement, a copy of which is annexed hereto and made part hereof as **Exhibit 2**, whereby certain Existing Mortgages[2] were combined so that Ladder Capital Finance LLC, Plaintiff's predecessor-in-interest, ("Ladder Capital") had a single, consolidated lien on the Property.

11. The Consolidation Agreement restates the terms and conditions of each of the Existing Mortgages in their entirety.

12. Borrower and Ladder Capital, as lender, also entered into that certain Loan Agreeement ("Loan Agreement"), a copy of which is annexed hereto and made a part hereof as **Exhibit 3**.

13. Borrower and Ladder Capital also entered into that certain Assignment of Leases and Rents ("Assignment of Leases and Rents"), a copy of which is annexed hereto and made part hereof as **Exhibit 4**.

14. Borrower, Ladder Capital, and Wells Fargo Bank, N.A.(the Master Servicer) entered into that certain Cash Management Agreement ("Cash Management Agreement"), a copy of which is annexed hereto and made part hereof as **Exhibit 5**.

---

[1] The Existing Notes are more particularly described in the Note, attached as Exhibit 1.
[2] The Existing Mortgages are more particularly described in the Note, attached as Exhibit 1.

15. On or about June 3, 2013, Ladder Capital executed and delivered that certain Assignment of Mortgage ("Assignment of the Consolidation Agreement"), a copy of which is annexed hereto and made part hereof as **Exhibit 6**, to Tuebor Captive Insurance Company LLC ("Tuebor"), assigning all of its right, title and interest in the mortgages subject to the Consolidation Agreement to Tuebor.

16. Upon information and belief, the Assignment of the Consolidation Agreement was duly recorded in the City Register's Office on October 28, 2013 as Document No. 2013071801146001.

17. On or about August 20, 2013, Tuebor executed and delivered that certain Assignment of Mortgage ("Assignment of Mortgage"), a copy of which is annexed hereto and made part hereof as **Exhibit 7**, Plaintiff, assigning all of its right, title and interest in the mortgages subject to the Consolidation Agreement to Plaintiff.

18. Upon information and belief, the the Assignment of the Mortgage was duly recorded in the City Register's Office on November 19, 2013 as Document No. 2013110500720001.

19. On or about May 31, 2013, Tuebor executed and delivered that certain General Assignment, a copy of which is annexed hereto and made part hereof as **Exhibit 8**, to Plaintiff, assigning all of its right, title and interest in the Loan Agreement to Plaintiff.

**PERTINENT TERMS OF THE LOAN DOCUMENTS**

20. The Loan Agreement provides, <u>inter</u> <u>alia</u>:...

    2.2.1 <u>Interest Rate</u>. Subject to the further provisions of this Agreement, including, without limitation, Sections 2.2.2 and 2.2.4 hereof, the Outstanding Principal Balance shall bear interest throughout the Term at the Interest Rate.

    2.2.2 <u>Default Rate</u>. In the event that, and for so long as, any Event of Default shall have occurred and be continuing and remain uncured, the Outstanding Principal Balance and, to the extent permitted by law, overdue

4

interest in respect of the Loan, shall, at Lender's election, accrue interest at the Default Rate, calculated from the date the Default occurred which led to such Event of Default, without regard to any grace or cure period contained herein. Interest at the Default Rate shall be paid immediately upon demand, which demand may be made as frequently as Lender shall elect; however, not more frequently than monthly.

2.3.1 <u>Payments Before Stated Maturity Date.</u> Borrower shall make a payment to Lender of interest only on the Closing Date for the period from the Closing Date through and including the next succeeding fifth (5th) day of a calendar month, whether such fifth $_{(5th)\,day}$ shall occur in the calendar month in which the Closing Date occurs or in the month immediately succeeding the month in which the Closing Date occurs (unless the Closing Date is the sixth day of a calendar month, in which case no such separate payment of interest shall be due). Lender shall have the right from time to time, in its sole discretion, upon not less than thirty (30) days prior written notice to Borrower, to change the Monthly Payment Date to a different calendar day each month which is not more than five (5) days earlier nor more than ten (10) days later than the sixth (6th) day of each calendar month. Each interest accrual period (the "Interest Period") thereafter shall commence on the sixth (6th) day of each calendar month during the Term and shall end on and include the fifth (5th) day of the next occurring calendar month; provided, however, that if Lender shall have elected to change the Monthly Payment Date as aforesaid, Lender shall have the option, but not the obligation, to adjust the interest accrual period correspondingly. Commencing on the Monthly Payment Date occurring in July, 2013 and on each Monthly Payment Date thereafter throughout the Term, Borrower shall make a constant monthly payment of $46,001.37 to Lender (each such payment, a "Monthly Debt Service Payment"), which payments shall be applied first to accrued and unpaid interest and the balance to principal. All amounts due under this Agreement and the Note shall be payable without setoff, counterclaim or any other deduction whatsoever.

10.1 <u>Events of Default</u>.

(a) Each of the following events shall constitute an event of default hereunder (each, an "Event of Default"):

   (i) if any monthly installment of principal and/or interest due under the Note or any payment of Reserve Funds due under this Agreement or the payment of the Obligations due on the Maturity Date is not paid when due;

   (ii) if any other portion of the Obligations (other than as set forth in the foregoing clause (i)) is not paid when due and such non-payment continues for five (5) days following written notice to Borrower that the same is due and payable;

   …

5

(viii)  (A) if a receiver, liquidator or trustee shall be appointed for Borrower or any SPC Party or if Borrower or any SPC Party shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal, state, local or foreign bankruptcy law, or any similar federal, state, local or foreign law, shall be filed by or against, consented to in writing, or acquiesced in writing by, Borrower or any SPC Party, or if any proceeding for the dissolution or liquidation of Borrower or any SPC Party shall be instituted; provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Borrower or such SPC Party, upon the same not being discharged, stayed or dismissed within ninety (90) days or (B) upon the declaration by Lender in its sole and absolute discretion that the same constitutes an Event of Default, if a receiver, liquidator or trustee shall be appointed for any Guarantor or if any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal, state, local or foreign bankruptcy law, or any similar federal, state, local or foreign law, shall be filed by or against, consented to in writing, or acquiesced in writing by, any Guarantor, or if any proceeding for the dissolution or liquidation of any Guarantor shall be instituted; provided, however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by the applicable Guarantor, upon the same not being discharged, stayed or dismissed within ninety (90) days;

…

(xv)  if Borrower ceases to continuously operate the Property or any material portion thereof as a hotel for any reason whatsoever (other than temporary cessation in connection with any repair or renovation thereof undertaken with the consent of Lender);

…

(xviii)  if Borrower shall continue to be in Default beyond any applicable notice and grace periods under any of the other terms, covenants or conditions of this Agreement not specified in subsections (i) to (xvii) above, (A) for ten (10) days after the earlier of (1) Borrower's actual knowledge thereof and (2) written notice to Borrower from Lender, in the case of any Default which can be cured by the payment of a sum of money, or (B) for thirty (30) days after the earlier of (1) Borrower's actual knowledge thereof and (2)written notice from Lender, in the case of any other Default; provided, however, that if such non-monetary Default is susceptible of cure but cannot reasonably be cured within such thirty (30) day period; and provided, further, that Borrower shall have commenced to cure such Default within such thirty (30) day

6

period and shall thereafter diligently and expeditiously proceed to cure the same, such thirty (30) day period shall be extended for such additional time as is reasonably necessary for Borrower in the exercise of due diligence to cure such Default, such additional period not to exceed one hundred twenty (120) days; or

  (xix) if there shall be a default under any of the other Loan Documents beyond any applicable notice, grace and/or cure periods contained in such Loan Documents, whether as to Borrower, any Guarantor, Manager, the Property or any other Person (other than Lender), and remains uncured or if any other such event shall occur or condition shall exist, and the effect of such event or condition is to accelerate the maturity of any portion of the Obligations or to permit Lender to accelerate the maturity of all or any portion of the Obligations.

(b) Upon the occurrence of an Event of Default (other than an Event of Default described in clauses (vii), (viii) or (ix) above) and at any time thereafter Lender may, in addition to any other rights or remedies available to it pursuant to the Loan Documents or at law or in equity, take such action, without further notice or further demand, in accordance with applicable law and the Loan Documents that Lender deems advisable to protect and enforce its rights against Borrower and in and to the Property, including declaring the Obligations to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in the Loan Documents against Borrower and the Property, including all rights or remedies available at law or in equity; and upon any Event of Default described in clauses (vii), (viii) or (ix) above, the Debt and all other Obligations of Borrower under the Loan Documents shall immediately and automatically become due and payable, without further notice or further demand, and Borrower hereby expressly waives any such notice or demand, anything contained in any Loan Document to the contrary notwithstanding.

<u>10.2 Remedies.</u>

(a) Upon the occurrence of an Event of Default that is continuing and remains uncured, all or any one or more of the rights, powers, privileges and other remedies available to Lender against Borrower under the Loan Documents executed and delivered by, or applicable to, Borrower or at law or in equity may be exercised by Lender at any time and from time to time, whether or not all or any of the Obligations shall be declared due and payable, and whether or not Lender shall have commenced any foreclosure proceeding or other action for the enforcement of its rights and remedies under any of the Loan Documents with respect to the Property. Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singly, successively, together or otherwise, at such time and in such order as Lender may determine in its sole discretion, to the fullest extent permitted by law,

7

without impairing or otherwise affecting the other rights and remedies of Lender permitted by law, equity or contract or as set forth in the Loan Documents. Without limiting the generality of the foregoing, if an Event of Default is continuing (i) Lender shall not be subject to any "one action" or "election of remedies" law or rule, and (ii) all Liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of its remedies against the Property and the Mortgage has been foreclosed, sold and/or otherwise realized upon in satisfaction of the Obligations or the Obligations have been paid in full.

11.3 Governing Law.

(A) THIS AGREEMENT WAS NEGOTIATED IN THE STATE OF NEW YORK, AND DELIVERED TO LENDER BY BORROWER IN THE STATE OF NEW YORK, AND THE PROCEEDS OF THE NOTE DELIVERED PURSUANT HERETO WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS AGREEMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN THE COURTS LOCATED WITHIN THE STATE OF NEW YORK, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAWS) AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES THE PROVISIONS FOR THE CREATION, PERFECTION AND ENFORCEMENT OF THE LIEN AND SECURITY INTEREST CREATED PURSUANT TO THE LOAN DOCUMENTS SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE, COMMONWEALTH OR DISTRICT, AS APPLICABLE, IN WHICH THE PROPERTY IS LOCATED, IT BEING UNDERSTOOD THAT, TO THE FULLEST EXTENT PERMITTED BY THE LAW OF SUCH STATE, COMMONWEALTH OR DISTRICT, AS APPLICABLE, THE LAW OF THE STATE OF NEW YORK SHALL GOVERN THE CONSTRUCTION, VALIDITY AND ENFORCEABILITY OF ALL LOAN DOCUMENTS AND ALL OF THE OBLIGATIONS ARISING HEREUNDER OR THEREUNDER. TO THE FULLEST EXTENT PERMITTED BY LAW, BORROWER HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT AND THE NOTE, AND THIS AGREEMENT AND THE NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK

PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW.

(B) ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST LENDER OR BORROWER ARISING OUT OF OR RELATING TO THIS AGREEMENT MAY AT LENDER'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND BORROWER WAIVES ANY OBJECTIONS WHICH IT MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. BORROWER DOES HEREBY AGREE THAT SERVICE OF ANY AND ALL PROCESS WHICH MAY BE SERVED IN ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY FEDERAL OR STATE COURT IN NEW YORK, NEW YORK SHALL IF SERVED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, BE DEEMED IN EVERY RESPECT EFFECTIVE SERVICE OF PROCESS UPON BORROWER IN ANY SUCH SUIT, ACTION OR PROCEEDING IN THE STATE OF NEW YORK.

11.13 <u>Expenses; Indemnity</u>.

(a) Borrower shall pay or, if Borrower fails to pay, reimburse Lender upon receipt of notice from Lender, for all actual reasonable third party costs and expenses (including reasonable attorneys' fees and disbursements) incurred by Lender in connection with (i) Borrower's ongoing performance of and compliance with Borrower's agreements and covenants contained in the Loan Documents on its part to be performed or complied with after the Closing Date, including, without limitation, confirming compliance with environmental and insurance requirements; (ii) Lender's ongoing performance of and compliance with all agreements and covenants contained in the Loan Documents on its part to be performed or complied with after the Closing Date; (iii) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to the Loan Documents and any other documents or matters requested by Borrower or any Guarantor; (iv) the filing and recording fees and expenses, title insurance and reasonable fees and expenses of counsel for providing to Lender all required legal opinions, and other similar expenses incurred, in creating and perfecting the Liens in favor of Lender pursuant to the Loan Documents; (v) enforcing or preserving any rights, in response to third party claims or the prosecuting or defending of any action or proceeding or other litigation, in each case against, under or affecting Borrower, the Loan Documents, the Property or any other security given for the Loan; and (vi) enforcing any Obligations of or collecting any payments due from Borrower or Guarantors under the Loan Documents or with respect

9

to the Property or in connection with any refinancing or restructuring of the credit arrangements provided under this Agreement in the nature of a "work-out" or of any Bankruptcy Action; provided, however, that Borrower shall not be liable for the payment of any such costs and expenses to the extent the same arise by reason of the gross negligence, illegal acts, fraud or willful misconduct of Lender, as determined by a final non-appealable judgment of a court of competent jurisdiction. Any costs due and payable to Lender may be paid, at Lender's election in its sole discretion, from any amounts in the Cash Management Account.

21. The Consolidation Agreement, contains, among other things, the following provisions:

> 7.1 <u>Remedies</u> Upon the occurrence and during the continuance of any Event of Default beyond applicable notice grace and cure periods, Borrower agrees that Lender may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender and subject to the terms of the Loan Agreement:
>
> (g) apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, which appointment is hereby authorized and consented to by Borrower, without notice and without regard for the adequacy of the security of the Debt and without regard for the solvency of Borrower, any guarantor, or indemnitor with respect to the Loan or any Person liable for the payment of the Debt or any part thereof;

## **BORROWER'S DEFAULTS**

22. Borrower failed to make timely Monthly Interest Payments to Plaintiff, in accordance with Section 2.3.1 of the Loan Agreement, from and after April 6, 2020 through the present.

23. As a result of Borrower's failure to make timely Monthly Interest Payments to Plaintiff, there were Events of Default under Section 10.1(a) of the Loan

10

Agreement, which have occurred and are continuing to occur, pursuant to Sections 2.3.1 and 2.2.2 of the Loan Agreement.

24. As a result of Borrower's failure to make timely Monthly Interest Payments to Plaintitff, the outstanding principal balance of the debt has been accruing interest at the Default Rate from April 6, 2020 and continues to accrue at the Default Rate due to Borrower's failure to cure the Events of Defaults.

25. Borrower's defaults under Section 2.3.1 and 10.1(a) of the Loan Agreement were identified in a Notice of Event of Default to Borrower dated May 28, 2020 (the "May 28, 2020 Notice"), a copy of which is attached hereto as **Exhibit 9** and incorporated herein.

26. On February 1, 2021, the Special Servicer, by its counsel, provided additional notice of Borrower's defaults under Section 2.3.1 and 10.1(a) of the Loan Agreement (the "February 1, 2021 Notice") and accelerated the debt in the principal amount then due of $ 6,725,811.03 plus interest accrued following the date of April 6, 2020, a copy of which is attached hereto as **Exhibit 10** and incorporated herein.

27. Further, and upon information and belief, Borrower has failed to continuously operate the Property since at least April of 2020.

28. Borrower's failure to continuously operate the Property resulted in an additional Event of Default under Section 10.1(xv) of the Loan Agreement.

29. As of the date herof, Borrower has failed to cure the Events of Default.

30. Upon information and belief, other defaults not enumerated herein may exist as well.

31. Pursuant to Section 11.13 of the Loan Agreement, Borrower is obligated to reimburse Plaintiff for all expenses incurred, including, but not limited to, attorneys' fees, in the event Plaintiff is compelled to incur such expenses in enforcing the terms of the loan documents.

32. As a result of the defaults described above, Plaintiff has been required to retain the services of an attorney and to incur expenses to enforce the terms of the loan documents.

33. By reason of the foregoing, Plaintiff is entitled to an award from in an amount to be determined at trial, representing the reimbursement of all expenses, including attorneys' fees, incurred by Plaintiff in enforcing compliance with the terms of the loan documents.

## AS AND FOR A FIRST CAUSE OF ACTION
**(Declaratory Judgment Against Borrower)**

34. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "33" of the Complaint with the same force and effect as if set forth at length herein.

35. There exists a justiciable controversy between Plaintiff and Borrower to which Plaintiff has no adequate remedy at law.

36. By reason of the foregoing, Plainiff hereby requests pursuant to 28 U.S.C. § 2201 and Section 10.2 of the Loan Agreement that this Court render a declaratory judgment setting forth the rights and obligations of Plaintiff and Borrower, specifically the failure to make monthly payments of interest and failure to continuously operate the Property constitute Events of Default under the loan documents.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Injunction)

37. Plaintiff repeats and realleges the allegations contained in paragraphs "1" through "33" of the Complaint with the same force and effect as if set forth at length herein.

38. By reason of the foregoing, pursuant to 28 U.S.C. § 2001, Plaintiff hereby requests that this Court appoint a receiver to (1) collect all revenues, rents and profits; (2) manage the Property; (3) make all necessary disbursements in connection with the maintenance of the Property; (4) pay current taxes, water and sewer charges, meter charges, insurance and other obligations if unpaid by Borrower as they may become due; (5) allow Plaintiff to access the Property for purposes of inspection; (6) with Plaintiff's prior written approval, market the Property for sale, solicit bids, negotiate with potential purchasers and executed proposed contracts, provided that no contract for the sale of the Property shall be effective except with agreement of Plaintiff in its sole discretion, and subject to approval by order of this Court; and (7) enter into, continue in effect, modify, reject or terminate any or all agreements (including any franchise or other agreements concerning the operation of the Property as a hotel), contracts, vendor contracts, service contracts leases, understandings or commitments related to the Property, and (8) operate, ,manage, maintain, preserve, secure and safeguard such Property including, but not limited to, the power and authority to close and/or open and operate the hotel located on the Property;

WHEREFORE, Plaintiff demands judgment against the defendant as follows:

  a) On the First Cause of Action, an Order

    (i) declaring that Borrower's failure to make certain Monthly Interest Payments and failure to continuously operate the Property constitute Events of Default under the Loan Agreement and the Consolidation Agreement; and

  b) On the Second Cause of Action,

    (i) appointing a Temporary Receiver during the pendency of the Event(s) of Default to (1) collect all revenues, rents and profits; (2) manage and operate the Property as the Temporary Receiver is so advised; (3) make all necessary disbursements in connection with the maintenance of the Property; (4)pay current taxes, water and sewer charges, meter charges, insurance and other obligations if unpaid by Borrower as they may become due; and (5) to take all actions the Receiver deems reasonable and appropriate to operate, manage, maintain, preserve, secure and safeguard such Property, including, but not limited to, the power and authority to close and/or open and operate the hotel located on the Property; and

  c) Awarding Plaintiff its legal fees, costs and expenses in an amount to be determined by the Court; and

  e) Awarding Plaintiff any such other and further relief as may be just and equitable.

Dated: New York, New York
   March 12, 2021

                BRYAN CAVE LEIGHTON PAISNER LLP

By: */s/ Suzanne M. Berger*
    Suzanne M. Berger (0452)
    Charlene Wang (1728)

*Attorneys for Plaintiff*
1290 Avenue of the Americas
New York, NY 10104
(212) 541-2000